BARTON CHEMICAL CORPORATION, Plaintiff-Appellant, *v.* THE HERTZ CORPORATION *et al.*, Defendants-Appellees.

First District (5th Division)   No. 76-812

Opinion filed August 26, 1977.

Allen C. Engerman and Barry E. Erlich, both of Solomon; Rosenfield, Elliott, Stiefel & Engerman, Ltd., of Chicago, for appellant.

Kirkland & Ellis, Sidley & Austin, Hubachek, Kelly, Rauch & Kirby, and Marks, Marks & Kaplan, all of Chicago (Don H. Reuben, Thomas F. Ging, Lawrence E. Strickling, Frederic F. Brace, Jr., William H. Tobin, Michael B. Roche, David M. Allen, Kenneth J. Marks, and William S. Kaplan, of counsel), for appellees.

Mr. JUSTICE MEJDA delivered the opinion of the court:

Plaintiff, Barton Chemical Corporation (Barton), brought separate actions against defendants, Hertz Corporation (Hertz), Avis Rent A Car System, Inc. (Avis), National Car Rental System, Inc. (National), and Chicago Budget Rent-A-Car Corporation (Budget), seeking an injunction and other relief both individually and on behalf of all other persons who had rented cars from defendants' O'Hare Airport facilities. The four actions were consolidated. Plaintiff appeals from an order of the trial court which struck and dismissed the class action allegations of the complaints.

■■ The sole issue which we must reach on review is whether those persons who, during the past five years, have entered into car rental agreements at O'Hare with any of the four defendants constitute a single class so as to be properly represented by a named plaintiff in a class action suit.

Barton's action is based on the alleged violation of certain provisions contained in the Airport Concession Agreements entered into by defendants with the City of Chicago (City). Hertz, Avis and National severally entered such agreements in 1972, and Budget executed its agreement in 1974. Article VII of the agreements, upon which Barton bases its action, provides in pertinent part as follows:

"A. *Schedule of Rates.* Prior to furnishing any rent-a-car services to the public under this Agreement, Concessionaire shall prepare and submit to the Commissioner of Aviation for written approval all schedules of rates for said services and discounts and rebates therefrom, which schedules shall be comparable with prices and charges prevailing in the City of Chicago. Any changes thereafter made in an approved schedule shall be similarly submitted to the Commissioner of Aviation for prior written approval. All such schedules shall be made available to the public by Concessionaire, to which schedules Concessionaire agrees to adhere. If Concessionaire applies any rate in excess of the approved rates or extends a discount less than the approved discount, the amount by which the charge based on such actual rate or actual discount deviates from a charge based on the approved rates or discounts shall constitute an over-charge which will, upon demand of the Commissioner of Aviation or Concessionaire's customer, be promptly refunded to said customer. If Concessionaire applies any rate which is less than the approved rate or extends a discount which is in excess of the approved discount, the amount by which the charge based on such actual rate or actual discount deviates from a charge based on the approved rates or discounts shall constitute an under-charge and an amount equivalent thereto shall

be included in gross receipts hereunder and the percentage fee shall be payable in respect thereto."

Barton, through its vice president and director, John Deamer, rented a car for a one-day period from each defendant at the O'Hare facility, on separate days in early June of 1975. On June 13, Barton filed four class action complaints in the circuit court of Cook County, each naming one of the four car rental agencies as defendant. Each complaint alleged that Barton had cause to use defendant's rental services at O'Hare and was charged in excess of the charges prevailing at other locations in the City for such services. The complaints further alleged that each defendant, in contravention of its concession agreement, has been (1) operating its rental facilities at O'Hare without preparing and submitting to the Commissioner of Aviation for approval schedules of rates for services, and (2) charging substantially in excess of the prices and charges for comparable rent-a-car services prevailing elsewhere in the City.

In its requested relief in each complaint Barton, both individually and as representative of the class plaintiffs, sought, *inter alia*: (1) injunctive relief restraining each defendant from operating at O'Hare until rate schedules are filed for approval, and further restraining each defendant from charging any rate at O'Hare in the future which is in excess of the comparable rates prevailing elsewhere in the City; (2) an order that each defendant file retroactive schedules of rates for services for all charges made in the past at O'Hare while operating under its concession agreement; and (3) an accounting for and refund to individual plaintiff and class plaintiffs of the past excess overcharges, "from the commencement date of the concession agreement to the date that they cease this illegal practice * * *."

The four separate actions against defendants were consolidated and each defendant moved to dismiss the class action allegations of Barton's complaints. By order of the trial court, discovery was conducted by both sides only as to the class action issues raised by defendants' motions to dismiss, and thereafter a succession of hearings were held. By order dated April 7, 1976, the trial court granted defendants' motions, and the class action allegations were stricken and dismissed with prejudice. The trial court found no just reason for delaying enforcement or appeal thereof, and Barton now appeals this order.

Opinion

We find the rationale of the recent Illinois Supreme Court decision in *Magro v. Continental Toyota, Inc.* (1977), 67 Ill. 2d 157, 365 N.E.2d 328, applicable to the instant case. In *Magro* the court noted:

"The narrow question before us is whether the record establishes that the claims of the plaintiff and other members of the purported

class were sufficiently similar to permit maintenance of the suit as a class action. The general rule is that a class action cannot be maintained unless all members of the class have a common interest in the questions involved and the results of the suit. (*Hagerty v. General Motors Corp.* (1974), 59 Ill. 2d 52; *Fiorito v. Jones* (1968), 39 Ill. 2d 531; *Harrison Sheet Steel Co. v. Lyons* (1959), 15 Ill. 2d 532; *Newberry Library v. Board of Education* (1944), 387 Ill. 85; *Peoples Store of Roseland v. McKibbin* (1942), 379 Ill. 148.) As we stated in *Adams v. Jewel Companies, Inc.* (1976), 63 Ill. 2d 336, 347: 'Necessary prerequisites to maintenance of such action are the existence of common questions which dominate the controversy and pertain to each class member and an interest in a common result.' " (67 Ill. 2d 157, 161, 365 N.E.2d 328, 330.)

Substantially similar questions were also considered by our supreme court in *Hagerty v. General Motors Corp.* (1974), 59 Ill. 2d 52, 319 N.E.2d 5. In *Magro,* as in *Hagerty,* the court concluded that the requisite common interest of the purported class was lacking inasmuch as a decision sustaining the individual plaintiff's contention as to his transaction with defendant would not establish a right of recovery in any other members of the class.

■■ A key requirement, therefore, for allowing a class action in Illinois is whether successful adjudication of the purported class representative's individual claim will establish a *right of recovery* in any other class members. Application of this principle in the instant case mandates affirmance of the order of the trial court striking and dismissing the allegations of Barton's complaint which failed to state a cause of action justifying the class action relief.

Barton contends that the only requisite for establishing a right to recovery in the instant case is that defendants charge in excess of the approved rates. Having alleged that defendants never filed rate schedules for approval, Barton argues further that the right of recovery, both individually and as to each class member, "flows automatically from the mere fact that there were no approved rate schedules." We disagree.

Rather, we find that the crux of Barton's complaint is the alleged failure of each of the four defendants to charge rates at O'Hare which were "comparable with prices and charges prevailing in the City of Chicago." Absent a finding that the rates charged were noncomparable, no recovery would lie since no overcharge would have occurred. However, should Barton establish that it was charged noncomparable rates on its one-day car rentals from each defendant, such a decision would not establish a right of recovery in any other class member.

Each rental assailed here by Barton involved a separate transaction and separate rental agreement between the myriad of domestic and foreign

passengers at O'Hare and the four car rental companies. Each transaction in turn involved unique factual circumstances, *e.g.,* type of car rented, duration of rental, applicable discount, whether gas was included, drop-off location, and the date of the rental. Such factors must be considered in combination with all other factors in determining the comparability of the rate charged in any one individual transaction with the rates prevailing in the City at the time of that transaction. Thus, even if Barton recovers, individual proofs of the facts regarding the comparability of the rates in every other transaction in the past five years would still be required before a right to recover would exist in any other purported class member. Therefore, no class action will lie, and the trial court was correct in striking the class action allegations of Barton's complaints. *Magro v. Continental Toyota, Inc.; Hagerty v. General Motors Corp.*

Barton vigorously contends that application of the *Magro* and *Hagerty* rationale to the instant case confuses the right of recovery as to each class member with the net amount that such class member will in fact recover. In its brief, Barton states that:

> "The common question of law and fact which prevails here is whether these defendants can ignore their agreements with the City, have no approved rates and charge whatever they want for the rental of automobiles at O'Hare. Each and every member of the class has a community of interest in this common question. This common question predominates over all other questions and mandates that this class should be allowed to be maintained."

Again, we must disagree.

■■ Under the agreement, there is no right to recover unless there has been an overcharge. In turn, however, an overcharge is not established by the mere fact that no approved rate schedules existed. The rates to be charged under the agreement had to be comparable to the prevailing City rates. Plaintiffs would not be entitled to gratis use of defendants' automobiles. Thus, whether schedules were approved or not, no overcharge would exist absent defendants charging rates not comparable to the prevailing City rates. As we have already noted, however, the issue of comparability of rates can only be determined on an individual transaction basis. Therefore, in the instant case, as in *Magro* and *Hagerty*, neither the right of recovery (*i.e.,* the *existence* of an overcharge) nor the amount of recovery (*i.e.,* the *amount* of that overcharge) can be established without examining the facts of each separate transaction. Comparability of the rate charged with the prevailing City rate for the type of service provided is the key to both determinations. While we may agree with Barton that certain common questions of law or fact exist among the purported class members, such questions do not predominate over the question of the comparability of the rates charged. In addition,

common questions of law or fact are alone not sufficient to sustain a class action. *Reardon v. Ford Motor Co.* (1972), 7 Ill. App. 3d 338, 287 N.E.2d 519.

Finally, Barton attempts to point to its requested relief as proof that the class action should be allowed. Part of the requested relief is that defendants be ordered to get rate schedules approved, and also that defendants submit retroactive schedules of rates for services and changes in rates for services since the inception of the agreements. Barton's contention is that once such schedules are submitted it would be a matter of simple accounting procedures to determine how much each class member should receive. We find this contention unpersuasive, however, in that it fatally misses the determinative issue in the case, *i.e.,* that the required common interest of the purported class members in the questions involved is lacking since Barton's recovery against defendants would not establish a right of recovery in any other customer who had rented a car from one of defendants' O'Hare facilities.

Indeed, a closer examination of Barton's argument in this regard reveals support for our holding that a class action may not properly lie in the instant case. Barton states that "[i]f defendants are ordered to submit retroactive rate schedules for approval, it flows automatically that the members of the class are *entitled* to refunds *if they were charged in excess of the approved schedules.*" (Emphasis added.) Since any such "approved, retroactive rate schedules" for any particular time period would have to contain rates comparable to those prevailing in the City during that same time period, this statement merely reinforces our belief that the *existence* of any overcharge, and hence the existence of any right to recover, can only be determined by making a comparison of rates in each separate transaction. Absent any overcharge no individual would be *entitled* to any recovery at all.

For the foregoing reasons the order of the circuit court of Cook County striking and dismissing plaintiff's class action allegations is affirmed.

Affirmed.

LORENZ and WILSON, JJ., concur.